## 19872

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF WAL-TERBORO, Appellant, v. BOARD OF BANK CONTROL FOR the State of SOUTH CAROLINA et al., Respondents.**

(207 S. E. (2d) 801)

*Messrs. Whaley, McCutchen, Blanton & Dent,* of Columbia, and *Keith M. Kinard,* of Walterboro, *for Appellant,*

*Messrs. Morris D. Rosen* and *I. M. Goldberg,* of Charleston, *for Individual Respondents,*

*Messrs. Whaley, McCutchen, Blanton & Dent,* of Columbia, and *Keith M. Kinard,* of Walterboro, *for Appellant,* in Reply.

August 6, 1974.

LEWIS, Justice:

This is an appeal from an order of the lower court affirming the action of the Board of Bank Control in granting a charter to the individual respondents for the operation of a savings and loan association in Walterboro, South Carolina. Appellant, an existing savings and loan association, with which the new association will compete, challenged by certiorari the validity of the action of the Board of Bank Control on several grounds, mainly that (1) appellants were

deprived of their claimed constitutional right to an adversary hearing before the Board of Bank Control, (2) the decision of the Board was without factual support, and (3) the meeting at which the action of the Board was taken was illegally held.

Individual respondents filed an application with the respondent Board of Bank Control (Board) on January 12, 1972, for authority to establish a state chartered savings and loan association in the City of Walterboro, Colleton County, South Carolina. This application was referred to the Supervising Examiner for the Board for investigation, pursuant to Section 8-57 of the 1962 Code of Laws; and the examiner's report was filed with the Board about March 6, 1972. Appellant and other lending institutions in the area opposed the application, with appellant presenting its position in opposition through a written brief and personal appearance before the Board on May 3, 1972. The Board considered the application and, after postponing final action thereon at two subsequent meetings, voted on June 29, 1972 to conditionally approve the establishment of the new savings and loan association. Appellant was notified by letter dated July 1, 1972 of the Board's action. Thereafter, at appellant's request, the Board reconsidered its approval of the application, but affirmed its earlier decision. This action for judicial review, by certiorari, of the decision of the Board was then instituted.

The hearing before the Board, at which appellant presented its opposition to the granting of the present application, was not an adversary hearing. It appears from the agreed statement in the transcript that each party was heard in the absence of the other, that is, "each party appeared separately and was not permitted to be present when the other party presented its position." The failure of the Board to grant an adversary hearing, including the right to cross-examine witnesses, forms the basis of the first assignment of error.

Appellant contends that it was entitled to a full adversary proceeding before the Board on the question of whether the application for a new savings and loan association should be approved for the Walterboro area.

The power and duties of the respondent Board are set forth in Chapter 2 of Title 8, Section 51 through 62, of the 1962 Code of Laws, as amended. Section 8-57 provides:

"No bank or building and loan association shall be granted a charter by the Secretary of State unless and until the Board has approved the application therefore in writing. No branch bank or branch building and loan association shall be established without the approval in writing of the Board. Before any such application for the incorporation of a bank or building and loan association or the establishment of a branch thereof shall be approved, the Board shall make an investigation to determine whether or not the applicants have complied with all the provisions of law, whether, in the judgment of the Board, they are qualified to operate such an institution and whether the establishment of such bank or building and loan association or of such branch thereof would serve the public interest, taking into consideration local circumstances and conditions at the place where such bank, building and loan association or branch thereof proposes to do business."

Section 8-57 contains no requirement that a hearing be held by the Board in determining whether a charter should be issued for a building and loan association. Instead, the power and duty is placed in the Board to conduct an investigation as to whether such charter should be issued and make its determination on the basis of that investigation. No contention is made that the Board failed to follow the statutory procedures in this case. Rather the attack is upon the constitutionality of Section 8-57. It is argued that the statute is unconstitutional in that its failure to provide for an adversary hearing for the benefit of competitors denied appellant due process in violation of the South Carolina and United States Constitutions.

In holding that Section 8-57 (then Section 7829-2) did not deprive an *applicant* for a bank charter of due process, the court, in *Floyd v. Thornton,* 220 S. C. 414, 68 S. E. (2d) 334, held that the banking business is, because of its pre-eminently public nature, recognized as a proper subject of legislative regulation under the police power of the State. 10 Am. Jur. (2d) Banks, Section 10. The court quoted with approval the following from *Noble State Bank v. Haskell,* 219 U. S. 104, 31 S. Ct. 186, 188-189, 55 L. Ed. 112:

"We cannot say that the public interests to which we have adverted, and others, are not sufficient to warrant the state in taking the whole business of banking under its control. On the contrary, we are of opinion that it may go on from regulation to prohibition except upon such conditions as it may prescribe."

It is recognized that due process "does not require a trial-type hearing in every conceivable case of government impairment of private interest;" and "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria and Restaurant Workers Union etc. v. McElroy,* 367 U. S. 886, 81 S. Ct. 1743, 1749, 6 L. Ed. (2d) 1230, 1236.

The issue before the Board was whether respondents would be issued a charter or license to establish a savings and loan association which would be a competitor of appellant. In substance, the interest, which appellant asserts will be affected by the action of the Board, is the claimed right to operate in the particular area without additional competition. It is contended that this entitles appellant to a trial-type hearing in opposition to the present application.

The licensing or chartering of banks and savings and loan associations is an exercise of the police power and essentially a legislative and administrative func-

tion. *Board of Bank Control v. Thomason,* 236 S. C. 158, 113 S. E. (2d) 544.

In the exercise of such powers and duties by the Board, neither the statute nor procedural due process requires that an adversary hearing be afforded a competitor in passing upon an application to establish a new bank or building and loan association. This view is sustained by the Federal decisions. See: *Bridgeport Federal Savings and Loan Association v. Federal Home Loan Bank Board,* 307 F. (2d) 580, 3 Cir.; *First National Bank of Smithfield, North Carolina v. Saxon,* 352 F. (2d) 267, 4 Cir.; *Webster Groves Trust Co. v. Saxon,* 370 F. (2d) 381, 8 Cir.

These decisions base the denial of an adversary hearing to a competitor in such matters upon the peculiar nature and requirements of the banking business. This reasoning is succinctly stated in *Webster Groves Trust Company v. Saxon, supra,* as follows:

"The very nature of the decision required by the Comptroller indicates that a formal adversary type hearing would be of little benefit to him in the discharge of his discretionary powers. There is the further factor present that if bank applicants were subjected to severe public cross-examination, public presentation of unfavorable evidence and were forced to disclose their future plans and programs to competitors, public confidence in the banking system could be adversely affected."

While the Board is not required to grant an adversary hearing in passing upon an application for a charter to establish a building and loan association, the statute directs that the Board conduct an investigation of each application and make its determination upon the basis of such investigation. Such investigation was made in this case.

In addition, appellant, pursuant to notice given to it of respondent's application, appeared before the Board and was given the opportunity to submit such facts and arguments

as it desired. This was in accordance with established procedures of the Board in handling charter applications. Appellant did appear before the Board and filed a brief in opposition to the application. The entire proceedings before the Board have been made a part of the record in this case.

The record discloses that the Board made a thorough investigation of the application of respondents and afforded appellant and other interested parties every opportunity to present such facts as might have a bearing upon the ultimate determination. We find nothing to indicate that the Board failed to give full consideration to the facts presented. Under these circumstances, the proceedings before the Board met the requirements of procedural due process.

Appellant contends further that the decision of the Board was without factual support in that the evidence conclusively shows that the establishment of another savings and loan association in the Walterboro area would not serve the public interest.

At the outset respondents argue that appellant, as a competitor, has no standing to obtain a judicial review of the action of the Board in granting the charter to respondents.

The writ was properly issued by the lower court. While the appellant has no right to be free from competition, it does have the right to be protected from illegal competition. An established bank or building and loan association, therefore, has sufficient interest to seek judicial review by certiorari for the purpose of insisting that a competing bank be established in accordance with the statutes.

The actions of the Board are reviewable on certiorari, however, for the correction of errors of law only; and the court will not review the findings of fact of the Board for the purpose of weighing the evidence, but only to ascertain whether such findings are supported by any evidence. *City of Columbia v. South Carolina Public Service Commission,* 242 S. C. 528, 131 S. E. (2d) 705.

In deciding whether an application for a charter to establish a building and loan association should be granted, the Board is required by Section 8-57, *supra,* to determine (1) whether the applicants have complied with all provisions of the law; (2) whether, in the judgment of the Board, the applicants are qualified to operate such an institution; and (3) whether the establishment of such business would serve the public interest, taking into consideration local circumstances and conditions at the place where the business proposes to operate.

The record amply supports the findings of the Board as to each of the foregoing considerations. The Board had before it various data as to the population and economic growth and potential of the area, the opinions of local residents supporting the need for the proposed savings and loan association, testimony to the effect that the savings and loan needs of the community were not being met by existing institutions, and testimony of dissatisfaction with some of the practices of appellant. Apparently, no question is raised as to whether respondents had complied with all applicable provisions of law and were qualified to operate a building and loan association. It would serve no useful purpose to detail here the evidence presented to the Board. It was ample to support the approval of the application. The Board's action in so doing is therefore conclusive.

The contention that the resolution of the Board should be set aside because it did not specifically set forth the findings of fact and grounds for the decision is not properly before the Court. It was not presented in the lower court and, therefore, will not be considered for the first time on appeal.

In any event, there is no merit in the exception. We pointed out in *State Board of Medical Examiners v. Gandy,* 248 S. C. 300, 149 S. E. (2d) 644, that orders of administrative agencies and boards must contain such specific and definite findings upon the evidence as will enable the Court to perform its function of review. The governing statute in

this case clearly sets forth the only matters to be considered in passing upon charter applications thereunder. Our review concerns whether there was evidence to show that respondents met the specific conditions set forth in the statute. We find no difficulty in reviewing the record in the light of these statutory requirements.

The Board did not meet in formal session to pass upon the application of respondents, but did so by telephone at a "conference call" meeting on June 29, 1972. At such a conference, every member of the Board is connected by telephone and can be heard by all members. Appellant contends that this telephone approval of the application by the Board was invalid. The position is taken that the Board could only act at a formally convened session with the members acting in the actual presence of each other. We find no basis upon which to upset the action of the Board on this ground.

The application of respondents had been considered by the Board on at least two prior occasions, and there is nothing to indicate that the Board failed to give full consideration to the matter at the telephone "conference call" meeting on June 29, 1972, when the application was approved. Neither is there any indication that the action taken at the June 29th meeting did not reflect the considered judgment of the Board. In fact, the record shows that, at the request of appellant, the action taken at the "conference call" meeting was reconsidered at a subsequent formal meeting of the Board on July 26, 1972 and reaffirmed.

Therefore, assuming that the "conference call" meeting was invalid, the reconsideration and reapproval of the application was effected at a valid meeting on July 26, 1972; and it is not contended otherwise. Such would have cured any alleged defects in the prior approval of June 29th.

The judgment is accordingly affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.